**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| Interbill, Inc., | Case No.: 2:22-cv-00827-JAD-VCF |
| Petitioner | |
| v. | **Order Confirming Arbitration Award and Closing Case** |
| Atlantic-Pacific Processing Systems NV Corp., | [ECF Nos. 14, 15] |
| Respondent | |

This action, filed by petitioner Interbill, Inc., seeks to confirm a nearly $1 million arbitration award entered against respondent Atlantic-Pacific Processing Systems NV Corporation. Interbill moves to confirm the award while the respondent moves to vacate or modify it. Because the respondent fails to show that the arbitrator exceeded her authority or acted with evident partiality, I confirm Interbill's arbitration award and close this case.

## Background

### A.    The referral agreement

In 2016, Interbill and Atlantic-Pacific Processing Systems (APPS) entered into a referral agreement for Interbill to refer merchants to APPS's credit-card processing services in exchange for a referral fee, also known as a residual.[1] The contract contains a referral-fee provision stating that "APPS agrees to pay [Interbill] . . . by the [m]erchants referred to APPS for so long [as] such [m]erchants process with APPS."[2] The agreement also contains a limitation-of-liability provision:

---

[1] ECF No. 15 at 3.

[2] ECF No. 14-1 at 2 (the referral agreement). The agreement actually reads, "APPS agrees to pay [Interbill] by the[m]erchants referred to APPS for so long *and* such [m]erchants process with APPS." *Id.* Neither party disputes that the provision was intended to read "so long as," and that is how the arbitrator interpreted it. ECF No. 14-4 at 3.

 "[l]iability of APPS for any and all causes, whether arising out of negligence, breach of contract, tort or otherwise, shall, in the aggregate, not exceed the amounts paid to [Interbill] by APPS for the six calendar months preceding any tort, breach, or other liability alleged by [Interbill].  The limitations set forth in this section shall apply whether or not the alleged breach or default is a breach of a fundamental condition or term, or a fundamental breach, or if any limited warranty or limited remedy fails of its essential purpose."[3]

In April 2020, APPS provided Interbill with 60 days' notice to terminate the agreement.[4] In June 2020, APPS stopped paying residuals to Interbill, though Interbill believed that it was still owed residuals under the referral-fee provision.[5]

**B.      Interbill's arbitration demand and APPS's counterclaims**

The parties submitted their dispute to arbitration as required by the contract's arbitration provision, which specified that all disputes must "be finally settled exclusively by binding arbitration in accordance with the United States Arbitration Act . . . and under the Commercial Arbitration Rules of the American Arbitration Association" (AAA).[6]  In Interbill's arbitration demand, it claimed that APPS "has failed and refused to pay Interbill referral fees as required" by the agreement and specified that the "referral fees owed are both for merchants that Interbill was receiving fees for before termination" and "those merchants that APPS failed or refused to give credit for during the relationship."[7]  Interbill alleged that "APPS ceased paying Interbill referral fees in June of 2020[] and has paid nothing since."[8]  Interbill demanded $299,000 for its

---

[3] ECF No. 14-1 at 3.

[4] ECF No. 15 at 6.

[5] *Id.*; ECF No. 14 at 4.

[6] ECF No. 14-1 at 5.

[7] ECF No. 18-4 at 2.

[8] *Id.*

claim, but also noted that the monthly referral amount from some of its referrals is "~$50,000."[9]
In February 2021, Interbill served its initial disclosures, in which it stated that it was "seeking
specific performance" of the referral agreement, requiring that APPS "continue to pay the
referral fee as long as APPS continues to service the referred [m]erchants."[10]  It also specified
that APPS owed Interbill "well over $400,000[] and counting" for the referral fees it failed to
pay since terminating the agreement.[11]

      APPS's answer to Interbill's demand included counterclaims alleging fraud.[12]  Interbill
filed a summary-judgment motion on those counterclaims, and APPS responded by moving to
withdraw them without prejudice to refiling in federal court and cancelling three noticed
depositions—which Interbill had already prepared and travelled for—"at the last minute."[13]
After briefing on the issue, the arbitrator dismissed APPS's counterclaims with prejudice.[14]
Interbill then sought attorneys' fees and costs that it incurred defending against those
counterclaims and preparing for the cancelled depositions, noting that such fees are available
under numerous provisions of Nevada law and under the arbitrator's authority to achieve a just
result as a sanction for APPS's dilatory tactics and bad-faith counterclaims.[15]

---

[9] *Id.*

[10] ECF No. 27-6 at 2.

[11] *Id.* at 11.

[12] ECF No. 28 at 2–3.

[13] ECF No. 14-4 at 5.

[14] *Id.*

[15] *See* ECF No. 27-10.

1    **C.      The arbitration hearing and award**

2            Interbill submitted a pre-arbitration brief to APPS and the arbitrator on the business day

3    before the final arbitration hearing.[16]  In it, Interbill claimed that APPS owed it $800,000.00 for

4    residuals that had accumulated over the year and a half since the referral agreement's

5    termination.[17]  Interbill also asked for specific performance of the referral-fee provision going

6    forward and "interest on the unpaid residuals, administrative expenses, attorneys' fees, and all

7    other costs related to this arbitration."[18]  On the morning of the hearing, the AAA sent Interbill

8    an email noting that Interbill "now ha[s] a claim [that is] in excess of $800,000" and assessing

9    additional filing fees for its claim based on the increased damages value.[19]  APPS opposed the

10   requests in Interbill's brief, contending that Interbill flouted AAA rules by waiting until the eve

11   of arbitration to mention that it was seeking specific performance and increased damages.[20]  The

12   arbitration hearing was conducted on December 13, 2021.[21]  The parties submitted post-

13   arbitration briefs, in which APPS once again objected to Interbill's specific-performance and

14   damages demands.[22]

15           In April 2022, the arbitrator issued an interim award in Interbill's favor.[23]  She

16   determined that the "plain language" of the referral-fee and limitation-of-liability provisions

17

18   _____

19   [16] ECF No. 18-6.

     [17] *Id.* at 2.

20   [18] *Id.* (cleaned up).

21   [19] ECF No. 18-7 at 2.

     [20] ECF No. 15 at 8.

22   [21] *See* ECF No. 14-4 at 1.

23   [22] ECF No. 18-8 (APPS's post-arbitration brief).

     [23] ECF No. 14-4 (interim award).

"appear . . . to be inconsistent."[24]  She noted that the referral-fee provision's ordinary meaning would result in APPS paying Interbill residuals "during and up to the end of time that" merchants referred by Interbill were processing with APPS.[25]  The arbitrator reasoned that, if the limitation-of-liability provision were read to preclude specific performance of the referral-fee provision, it would "render [that] provision, merely a few paragraphs above the limitation[-]of[-]liability provision, superfluous."[26]  She then looked to the "mutual intentions of the parties and the circumstances surrounding the [r]eferral agreement" and determined that the contract's language and the parties' conduct indicated that the limitation-of-liability provision "applies to other damages APPS may have caused to Interbill" but does not limit Interbill's ability to seek specific performance of the referral-fee provision.[27]  So the arbitrator concluded that Interbill was owed residuals from June 2020, when APPS stopped paying them, and "for so long as the [m]erchants Interbill referred to APPS[] prior to July 1, 2020, continue to process with APPS."[28]  She awarded Interbill $813,355.95 in residuals accrued from June 2020–November 2021.[29]

The arbitrator also addressed Interbill's attorneys' fees request "related to APPS'[s] [c]ounterclaims and dismissal/withdrawal of the same."[30]  She noted that Interbill "was forced to expend attorneys' fees and costs to have its counsel prepare for and travel to [three] depositions . . . only for APPS to unilaterally cancel those depositions at the last minute."[31]  The arbitrator

---

[24] *Id.* at 3.

[25] *Id.*

[26] *Id.* at 4.

[27] *Id.*

[28] *Id.* at 4–5.

[29] *Id.*

[30] *Id.* at 5.

[31] *Id.*

determined that it was "just and equitable to require APPS to reimburse Interbill for the reasonable attorneys' fees and costs it incurred to prepare for and attend the depositions cancelled at the last minute by APPS and to prepare" its attorneys' fees motion, but she denied Interbill's motion as it related to APPS's dismissal of its counterclaims.[32]  She also determined that Interbill was entitled to additional costs of $33,242.11 "under NRS 18.005, NRS 38.238, and[] for the reasons set forth herein."[33]  She directed Interbill to submit invoices for attorneys' fees consistent with her order and "any argument for and calculation of any pre-judgment interest."[34]  In May 2021, the arbitrator issued her final award, which incorporated her interim award and added $41,295.00 in attorneys' fees and $55,824.85 in pre-judgment interest.[35] Interbill now seeks to confirm that award; APPS countermoves to vacate or modify it.[36]

---

[32] *Id.*

[33] *Id.* at 6.

[34] *Id.*

[35] ECF No. 14-5.

[36] ECF No. 14; ECF No. 15.

**Discussion**

**A.      APPS has failed to show that the arbitration award should be vacated.**

The Federal Arbitration Act (FAA)[37] permits any party to apply to the court to confirm, vacate, modify, or correct an arbitration award.[38]  "[F]ederal court review of arbitration awards is extremely limited,"[39] and an award must be confirmed unless it is vacated, modified, or corrected on the grounds described in the FAA.[40]  An award may be vacated if: (1) it was procured by "corruption, fraud, or undue means"; (2) "there was evident partiality or corruption in the arbitrator[]"; (3) "the arbitrator[] [was] guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy[,] or of any other misbehavior by which the rights of any party have been prejudiced"; or (4) "the arbitrator[] exceeded [her] powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made."[41]  APPS contends that the award should be vacated because the arbitrator exceeded her powers by failing

---

[37] The parties' agreement specifies that any arbitration will be conducted "in accordance with the United States Arbitration Act (Title 9, U.S. Code), notwithstanding any choice[-]of[-]law provision in this [a]greement."  ECF No. 14-1 at 5.  *See also* ECF No. 14-3 (the arbitrator's preliminary-hearing-and-scheduling order, noting that "[t]he Federal Arbitration Act will apply in this [a]rbitration and Nevada law will be applied substantively to this [a]rbitration").  But APPS argues that the FAA doesn't preempt state-law vacatur standards and thus discusses both, citing *Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ.*, 489 U.S. 468, 477 (1989) for the proposition.  But, as Interbill argues, *Volt* also emphasized that "the thrust of the federal law is that arbitration is strictly a matter of contract, [so] the parties to an arbitration agreement should be at liberty to choose the terms under which they will arbitrate."  *Id.* at 472 (cleaned up).  Here, the parties contracted for the application of federal arbitration law, so that is the law that I apply.

[38] 9 U.S.C. §§ 9, 10, 11.

[39] *A.G. Edwards & Sons, Inc. v. McCollough*, 967 F.2d 1401, 1403 (9th Cir. 1992) (cleaned up).

[40] *Hall St. Assocs., L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 582 (2008) (citing 9 U.S.C. § 9).

[41] 9 U.S.C. § 10(a).

to provide a fundamentally fair hearing and awarding relief that was not contemplated by the referral agreement.[42]  It also contends that the arbitrator showed evident partiality.[43]

### 1.    The arbitrator's award did not exceed her powers.

#### a.    The arbitrator provided a fundamentally fair hearing and only ruled on matters submitted to her.

APPS insists that Interbill's demand was clearly limited to monetary damages of $299,000, so the arbitrator improperly considered Interbill's requests for specific performance and more than $800,000 in damages, depriving APPS of a fundamentally fair hearing.  It cites to AAA Commercial Rule R-6, which states that a party "may, at any time prior to the close of the hearing . . . increase or decrease the amount of its claim" and that written notice of the change must be made to the AAA (so that it can assess any additional arbitration fees that an increased damages request may require) and to all parties.[44]  In contrast to a change in the amount of a claim, "any new or different claim" must be made in writing and "filed with the AAA, and a copy [must] be provided to the other party, who [will] have . . . 14 calendar days . . . to file an answer to the new claim."[45]  APPS claims that Interbill didn't comply with these rules and, by informing APPS of its requests for increased damages and specific performance mere days before the hearing, deprived APPS of adequate notice of its claims.[46]

An arbitration hearing "is fundamentally fair if the minimal requirements of fairness—adequate notice, a hearing on the evidence, and an impartial decision by the arbitrator—are

---

[42] ECF No. 15.

[43] ECF No. 25 at 23.

[44] *See* ECF No. 15 at 12–13 (citing AAA Com. Rules R-6(a) & (b)).

[45] *Id.*

[46] ECF No. 15 at 11–14.

met."[47]   APPS has not shown that it was deprived of these minimal requirements.  First, APPS's contention that Interbill never mentioned specific performance or damages above its initial $299,000 demand is false.  Interbill mentioned both in its initial disclosures, giving APPS adequate notice that Interbill was seeking that relief.[48]

APPS argues that a mention in initial disclosures does not satisfy the AAA's rules for notifying opposing parties of new claims or demands, and thus that the arbitrator exceeded her authority by failing to follow the AAA's rules and allowing those claims to survive.  But, as to the increased damages, Interbill clearly met its burden under the AAA Commercial Rules.  Rule R-6(a) states that a party may "at any time prior to the close of the hearing or by the date established by the arbitrator increase or decrease the amount of its claim" by providing written notice to the AAA and all parties.[49]  Interbill did just that in its pre-hearing brief.[50]  And indeed, the AAA recognized Interbill's notice by assessing higher arbitration fees based on Interbill's representations in that pre-hearing brief.[51]  So APPS fails to show that Interbill's increased damages request violated the AAA's rules.

APPS's contention that Interbill failed to provide notice of its "new" specific-performance claim also fails.  The Ninth Circuit has held that "federal law does not impose any requirements as to how specific a notice of arbitration must be."[52]  It has also instructed that "the arbitrator's interpretation of the scope of [her] powers is entitled to the same deference as [her]

---

[47] *Carpenters 46 N. Cal. Counties Conf. Bd. v. Zcon Builders*, 96 F.3d 410, 413 (9th Cir. 1996).

[48] *See* ECF No. 27-6.

[49] AAA Com. Rules R-6(a).

[50] *See* ECF No. 18-6.

[51] *See* ECF No. 18-7 at 2.

[52] *Schoenduve Corp. v. Lucent Techs., Inc.*, 442 F.3d 727, 733 (9th Cir. 2006).

determination on the merits."[53]  While not the perfect picture of clarity, Interbill's initial

arbitration demand sufficiently provided notice that Interbill believed APPS had stopped paying

residuals that Interbill was owed for the period of time beyond July 1, 2020, when the referral

agreement was terminated.  And by awarding specific performance, the arbitrator indicated that

she determined it was within the scope of her authority to do so under the AAA's procedural

rules.[54]  On the facts presented and with significant deference to the arbitrator's decision, I find

that APPS's argument that Interbill provided notice of its specific-performance request only

upon the eve of the hearing or in violation of AAA rules is unavailing.  And even if the late

notice did violate the AAA's rules, APPS fails to point to any authority stating that an

arbitrator's failure to precisely follow internal AAA rules merits the harsh remedy of vacatur.

Particularly when APPS received adequate notice of Interbill's claims and damage theories, I

decline to disturb the arbitrator's award on this basis.

### b.    The arbitrator did not manifestly disregard the law and her ruling was a plausible interpretation of the parties' agreement.

APPS next argues that the award is subject to vacatur under FAA § 10(a)(4) because the

arbitrator exceeded her powers.  The Ninth Circuit has held "that arbitrators exceed their powers

[under § 10(a)(4)] not when they merely interpret or apply the governing law incorrectly, but

---

[53] *Id.*

[54] *See McKesson Corp. v. Local 150 IBT*, 969 F.2d 831, 834 (9th Cir. 1992) (holding that, "faced with an award that contains no discussion of a procedural issue that has, either explicitly or implicitly, been submitted to the arbitrator, we will presume that the arbitrator's decision to issue the award carries with it whatever procedural ruling was necessary to permit its issuance"). APPS raised in its post-arbitration brief its argument that Interbill's specific-performance request violated AAA rules for submitting new claims.  Because the arbitrator awarded Interbill's requested relief, I assume that she ruled that the request did not violate AAA rules.

when the award is completely irrational or exhibits a manifest disregard for the law."[55]
"Manifest disregard for the law means something more than just an error in the law or a failure
on the part of the arbitrator[] to understand or apply the law."[56]  Rather, "[i]t must be clear from
the record that the arbitrator[] recognized the applicable law and then ignored it."[57]

"An award is completely irrational only where the arbitration decision fails to draw its
essence from the agreement."[58]  "An award is said to 'draw its essence' from the contract if it is
based on the contractual language and the parties' conduct."[59]  In determining whether an award
draws its essence from the agreement, "'the district court must accord considerable deference to
the arbitrator's judgment' and should not 'vacate the award because it interpreted the agreement
differently.'"[60]  The "assertion that the [arbitrator] misinterpreted certain [contractual] provisions
is insufficient to show that the amount of the awards was completely irrational."[61]  "[A]s long as
the arbitrator is even arguably construing or applying the contract and acting within the scope of
[her] authority, that a court is convinced [s]he committed serious error does not suffice to

---

[55] *Kyocera Corp. v. Prudential-Bache Trade Servs., Inc.*, 341 F.3d 987, 997 (9th Cir. 2003) (en banc) (cleaned up).

[56] *Michigan Mut. Ins. Co. v. Unigard Sec. Ins. Co.*, 44 F.3d 825, 832 (9th Cir. 1995).

[57] *Id.*

[58] *Lagstein v. Certain Underwriters at Lloyd's, London*, 607 F.3d 634, 642 (9th Cir. 2010).

[59] *Sunshine Min. Co. v. United Steelworkers of Am. AFL-CIO*, 823 F.2d 1289, 1293 (9th Cir. 1987).

[60] *Pac. Reins. Mgmt. Corp. v. Ohio Reins. Corp.*, 935 F.2d 1019, 1024 (9th Cir. 1991) (cleaned up) (quoting *New Meiji Market v. United Food Com. Workers Local Union 905*, 789 F.2d 1334, 1335–36 (9th Cir. 1986)).

[61] *Lagstein*, 607 F.3d at 642.

overturn [her] decision."[62]  As long as the award "represents a plausible interpretation of the contract," it must be enforced.[63]

APPS contends that the arbitrator's award was completely irrational because it "disregarded" the limitation-of-liability provision and thus failed to draw its essence from the agreement.[64]  But the arbitrator clearly addressed the liability provision, found that it conflicted with the referral-fee provision, and interpreted the contract in a manner that gave both provisions meaning.[65]  She noted that APPS's interpretation would render the referral-fee provision superfluous and cited relevant Nevada authority stating that courts must read contracts to avoid such a result.[66]  So, contrary to APPS's assertions, the arbitrator did not "disregard" the provision: she simply interpreted it in a manner with which APPS disagrees.

APPS analogizes to *Pacific Motor Trucking Company v. Automobile Machinists Union* to support its argument that the arbitrator exceeded her powers by disregarding the liability provision.[67]  But *Pacific Motor* is distinguishable.  In that case, the parties arbitrated a dispute over whether the company was permitted to demote a senior foreman.[68]  The parties' contract "provided that the company could select [w]orking [f]oremen without regard to seniority."[69]  But the arbitrator ruled that the company could not demote the foreman "because to do so would be

---

[62] *United Paperworkers Int'l Union v. Misco, Inc.*, 484 U.S. 29, 38 (1987).

[63] *Pac. Motor Trucking Co. v. Auto. Machinists Union*, 702 F.2d 176, 176 (9th Cir. 1983).

[64] ECF No. 15 at 15.

[65] ECF No. 14-4 at 3–4.

[66] *Id.*

[67] ECF No. 15 at 13–14 (citing *Pac. Motor Trucking*, 702 F.2d at 177).

[68] *Pac. Motor Trucking*, 702 F.2d at 176.

[69] *Id.*

unreasonable and unconscionable in light of the incredibly long time [he] had held the job."[70]
The Ninth Circuit vacated the award, finding that the arbitrator improperly disregarded the
contract's seniority provision "to correct what he perceived as an injustice."[71]  Here, by contrast,
the arbitrator did not "disregard" the limitation-of-liability provision; she interpreted it to
harmonize with the rest of the contract's terms.  Even if the arbitrator's interpretation was wrong,
such error is not a valid basis to vacate her award because courts "have no authority to vacate an
award solely because of an alleged error in contract interpretation."[72]  So I reject APPS's
argument that the arbitrator's interpretation exceeded her authority.

### c.     APPS has not shown that the arbitrator exceeded her authority by awarding attorneys' fees and costs.

APPS contends that the arbitrator exceeded her powers by awarding attorneys' fees and
costs because the referral agreement does not expressly permit them.[73]  APPS notes that the
arbitrator based her award of fees on AAA Commercial Rule R-23, which permits arbitrators to
"issue any orders necessary to enforce the provisions of rules R-21 and R-22 and to otherwise
achieve a fair, efficient[,] and economical resolution of the case."[74]  And APPS points to an
important limitation in AAA Commercial Rule R-47(d), which states that an arbitrator's award
may include "an award of attorneys' fees if all parties have requested such an award or it is
authorized by law or their arbitration agreement."[75]  APPS contends that it did not request an

---

[70] *Id.*

[71] *Id.*

[72] *Lagstein*, 607 F.3d at 643.

[73] ECF No. 15 at 19.

[74] *Id.* (citing arbitrator's interim award).

[75] *Id.* (quoting AAA Com. Rule R-47(d)).

1  attorneys' fees award and points to the absence of an attorneys' fees provision in the referral

2  agreement to show that the award was not permitted by AAA rules.[76]

3  　　　　But APPS fails to mention that the arbitrator also relied on NRS 18.005 and NRS 38.238

4  to support the costs that she assessed.[77]  NRS 18.005 defines "costs" in civil practice.[78]  NRS

5  38.238 states that "[a]n arbitrator may award reasonable attorney's fees and other reasonable

6  expenses of arbitration if such an award is authorized by law in a civil action involving the same

7  claim or by the agreement of the parties to the arbitral proceeding."[79]  While the arbitrator only

8  cited this statutory authority to support her costs assessments, NRS 38.238's statutory authority

9  extends to attorneys' fees.[80]  And in civil actions, courts are permitted to award fees to sanction

10  bad-faith conduct.[81]  That is what the arbitrator did here—her award of attorneys' fees was not

11

12  _____

[76] *Id.* at 20.

13  [77] *See* ECF No. 14-4 at 6.

14  [78] Nev. Rev. Stat. § 18.005.

[79] Nev. Rev. Stat. § 38.238(1).

15  [80] Interbill made this argument in its fees motion to the arbitrator and attempts to incorporate
those arguments by reference.  ECF No. 26 at 17.  APPS objects, stating that incorporation by
16  reference is improper, so I should not consider those arguments.  ECF No. 30 at 4.  Because
Interbill's attempt to expand its response brief by reference to a 36-page arbitration motion is
17  improper, I do not consider those arguments here.  *See* L.R. 7-3(b) (limiting response briefs to 24
pages); *see also D'Agnese v. Novartis Pharm. Corp.*, 952 F. Supp. 880, 885 (D. Ariz. 2013)
18  (disregarding arguments made through incorporation by reference because the practice
"circumvents the [c]ourt's rules governing page limits").  Nevertheless, the arbitrator expressly
19  cited those statutory references in her award, and the burden is on APPS to demonstrate why that
statutory authority doesn't authorize the award.  *See U.S. Life Ins. Co. v. Superior Nat. Ins. Co.*,
20  591 F.3d 1167, 1173 (9th Cir. 2010) (holding that "[t]he burden of establishing grounds for
vacating an arbitration award is on the party seeking it").  APPS fails to do so.
21
[81] *See WPH Architecture, Inc. v. Vegas VP, LP*, 360 P.3d 1145, 1149 (Nev. 2015) (noting that
22  NRS 38.238 gives arbitrators discretion to award fees and costs authorized by Nevada's
substantive attorney-fee rules in civil cases); *see also Todd Shipyards Corp. v. Cunard Line, Ltd.*,
23  943 F.2d 1056, 1064–65 (9th Cir. 1991) (holding that, "[i]n light of the broad power of
arbitrators to fashion appropriate remedies and the accepted bad[-]faith conduct exception to the
American Rule [against awarding attorneys' fees to the prevailing party], we hold that it was

for Interbill's status as the prevailing party but rather for APPS's decision to unilaterally cancel depositions at the last minute.  APPS's pedantic argument that the arbitrator did not use the words "bad faith" in making her award is unavailing.  The arbitrator's award clearly attributed the fees to APPS's decision to cancel depositions; she did not need to use any particular words to show that she was awarding fees as a sanction for APPS's conduct.[82]  So I decline to vacate the arbitrator's award of attorneys' fees and costs because she did not exceed her authority in awarding them.

### 2.  APPS has not shown that the arbitrator acted with evident partiality.

During the arbitration proceedings, APPS sent the AAA a formal objection to the arbitrator, citing the fact that the arbitrator had served as opposing counsel in contentious litigation against the firm that was representing APPS.[83]  But before the objection was sent, Interbill emailed the AAA, with the arbitrator copied, stating it did not have an objection to the arbitrator.[84]  It took the AAA 20 days to issue a decision overruling APPS's objection.[85]  The AAA representative "noted her efforts to keep [the] [a]rbitrator from suspecting an objection to her remaining assigned" to the arbitration.[86]  But APPS argues that, given the delay, "there is no

---

within the power of the arbitration panel . . . to award attorneys' fees" in a case where attorneys' fees were not expressly authorized by the agreement (cleaned up)).

[82] *See McKesson Corp.*, 969 F.2d at 834 ("Because an arbitrator has no obligation to explain the basis of his decision, he need not make an express finding on every procedural matter that bears on his award.").

[83] *See* ECF No. 25 at 8.

[84] *Id.*

[85] *Id.*

[86] ECF No. 25-13 at 2 (an email in which the AAA representative stated that she told the arbitrator that the delay "ha[d] been mostly [her] fault").

way that the [a]rbitrator could not have known or suspected that an objection had been made" and thus that the arbitrator was biased against APPS.[87]

To show "evident partiality," APPS must "establish specific facts indicating actual bias toward or against a party."[88]  "The appearance of impropriety, standing alone, is insufficient" to show actual bias.[89]  "The party alleging evident partiality . . . must establish specific facts [that] indicate improper motives."[90]  "[R]epeated rulings against one party to the arbitration will not establish bias absent some evidence of improper motivation."[91]

APPS's actual-bias argument is based on the unfounded speculation that the arbitrator may have been aware that APPS objected to her assignment and thus had improper motives when she awarded Interbill "every relief that Interbill requested, even where that relief was not authorized by any law or term of contract between the parties."[92]  APPS presents no facts indicating that the arbitrator in fact knew that APPS objected to her assignment.  Even if it could, it has not shown any evidence of partiality other than the fact that the arbitrator ruled against APPS.  This is insufficient to support a finding of evident partiality, so I decline to vacate the award on this basis.

---

[87] *Id.*

[88] *Lagstein*, 607 F.3d at 645–46.  Evident partiality can also be shown if the arbitrator "failed to disclose to the parties information that creates [a] reasonable impression of bias."  *Id.*  APPS argues only that the arbitrator showed actual bias.  ECF No. 25 at 23.

[89] *Woods v. Saturn Distrib. Corp.*, 78 F.3d 424, 427 (9th Cir. 1996) (quoting *Sheet Metal Workers Int'l Ass'n Local Union No. 420 v. Kinney Air Conditioning Co.*, 756 F.2d 742, 746 (9th Cir. 1985)) (cleaned up).

[90] *Id.* (cleaned up).

[91] *Kinney*, 756 F.2d at 746.

[92] ECF No. 25 at 23.

16

**B.     APPS has not met the statutory requirements for award modification.**

Courts "may make an order modifying or correcting [an arbitration] award upon the application of any party to the arbitration (a) where there was an evident material miscalculation of figures . . . . ; (b) where the arbitrator[] [has] awarded upon a matter not submitted to [her], unless it is a matter not affecting the merits of the decision upon the matter submitted; and (c) where the award is imperfect in matter of form not affecting the merits of the controversy."[93]

APPS argues that, because the "issues of specific performance, damages in excess of $299,000, and the right to award attorneys' fees were not before the [a]rbitrator based on the submissions," the court should modify the award to cabin Interbill's damages to the amount permitted by the agreement's limitation-of-liability provision.  APPS relies on the same arguments it made for vacatur to support its modification request.  For the same reasons I rejected those arguments under § 10's vacatur standard, I reject them under § 11's modification standard.

### Conclusion

**IT IS THEREFORE ORDERED** that Interbill Inc's motion to confirm final arbitration award **[ECF No. 14] is GRANTED** and Atlantic-Pacific Processing Systems, LLC's motion to vacate or modify the final arbitration award **[ECF No. 15] is DENIED**.

The **Clerk of Court** is directed to **ENTER FINAL JUDGMENT in favor of Interbill, Inc. and against Atlantic-Pacific Processing Systems, LLC** for $813,355.95 in damages, $55,824.85 in prejudgment interest, and $74,537.11 in attorneys' fees and costs, for a **total judgment of $943,717.91**.  APPS must also **specifically perform** under the referral agreement

---

[93] 9 U.S.C. § 11.

17

by paying residuals to Interbill for so long as the merchants Interbill referred to APPS prior to July 1, 2020, continue to process with APPS.

The **Clerk of Court** is also directed to **CLOSE THIS CASE**.

_____
U.S. District Judge Jennifer A. Dorsey
December 21, 2022